IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| BRAD W. JOHNSON | § § § | |
| Plaintiff | § | |
| | § | Civil Action No. 4:16-cv-551 |
| v. | § § | |
| EQUIFAX INFORMATION SERVICES, LLC | § § § | |
| And | § § | |
| DISCOVER FINANCIAL SERVICES | § § | Demand for Jury Trial |
| Defendants | § § | |

## AMENDED COMPLAINT

COMES NOW the Plaintiff, BRAD W. JOHNSON, (hereinafter the "Plaintiff"),

by Counsel, Dennis McCarty, and for his amended complaint against the Defendants

EQUIFAX INFORMATION SERVICES, LLC (hereinafter Equifax) and DISCOVER

FINANCIAL SERVICES (hereinafter Discover), alleges as follows:

## PRELIMINARY STATEMENT

1.  This is an action for actual, statutory and punitive damages, costs, and

attorney's fees pursuant to 15 U.S.C. §1681 et seq. (Federal Fair Credit Reporting Act)

## JURISDICTION AND VENUE

2.   Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

3.   Venue in this District is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this claim occurred, as well as a substantial part of the property that is subject to this action is located, in this Judicial District.

## PARTIES

4.   Plaintiff is a natural person and is a resident and citizen of Denton County, the State of Texas, United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.   Defendant EQUIFAX INFORMATION SERVICES, LLC is a foreign For-Profit Corporation registered to do business in Texas. Defendant is a "consumer reporting agency", as defined 15 U.S.C §1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

6.   Defendant DISCOVER FINANCIAL SERVICES is a foreign For-Profit Corporation registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s, who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumers.

## FACTUAL ALLEGATIONS

7.   Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

8.   The Defendants, Equifax and Discover, are reporting an authorized user Discover account that contains negative and derogatory information on Plaintiff's credit report, even though he is not obligated or financially responsible for paying the account.  Because authorized user accounts have no responsibility for payment, the three major credit reporting agencies, Equifax, TransUnion and Experian remove authorized user accounts when requested.

9.   Plaintiff is not contractually or financially responsible or obligated on any level for the derogatory information on the Discover account that both Equifax and Discover are reporting on his credit report.  The Primary Account holder added Plaintiff as an Authorized User on Discover account.  Plaintiff, as an authorized user, did not sign any documents or obligate himself to be financially responsible for the Discover account.  In fact, all that is needed to add an authorized user to an account is for the primary card holder to simply call credit card company with a person's name and address; a social security number or credit check of the authorized user isn't even needed or used and the authorized user is added on that one phone call.  An authorized user doesn't even know they have been added unless they are told by the person adding them(primary account holder), or the account shows up on the authorized users credit report and the authorized user happens to have the report pulled or looked at. There isn't any contract between Discover and Plaintiff. Plaintiff hasn't signed or obligated himself to being financially responsible for the Discover account.  Discover and Equifax are both reporting that Plaintiff was between 120-140 days late which resulted

3

in the account to be "charged off", even though Plaintiff never signed or obligated himself to Discover to pay the account, to be clear, Plaintiff is NOT financially responsible or financially obligated to make any payments on the Discover account, but it is being reported as if he was the primary card holder and that Plaintiff missed paying Discover on an account that he was financially responsible for, which is not the truth or remotely accurate.

10. Plaintiff wanted the entire authorized user account removed from his credit report and informed Equifax as such.  Plaintiff informed Equifax, in two different dispute letters, that Mr. Johnson was NOT a signer, obligor or accommodation party to the original contract but merely and authorized user of the account. Plaintiff, by and through Counsel, demanded that the authorized user account be removed from his credit history.  It is important to note that Plaintiff originally had five (5) authorized user accounts on this credit report and after two (2) disputes, Equifax removed four (4) of them, as described below in further detail. All of the accounts were authorized user accounts and were disputed identically.  Equifax can not pick and choose what authorized user accounts get to stay, since an authorized user account, as in this case, can crush a credit score.  Equifax can not reach the standard of "maximum accuracy", which is required pursuant to 15 U.S.C. §1681, with such random reporting, especially when each account affects credit scores.  Equifax is aware of this, based on their regular practice of removing authorized user accounts when requested by the authorized users.  Just the account being on a credit report, regardless of its reporting history can effect credit scores and if authorized users wish to have it removed for any reason, the three major bureaus will remove it for them.  Please see Exhibit A & B.

Equifax's policy is proven by their history of removing them on a regular basis.  This account apparently "slipped" through the cracks and now Equifax is claiming amnesia of their own policy and practice.  The "maximum accuracy" standard that Equifax is required to meet pursuant to 15 USC §1681 can not be meet if Equifax is randomly picking and choosing the authorized user accounts they decide will be removed or those that they wish to have continue to report, especially since authorized user accounts effect credit scores.  Please see Exhibit C.  Equifax's history and current practice of removing some and  continuing to report other authorized user accounts is completely random.

11. Discover knows that they don't have a contract or have ever entered into any agreement with Plaintiff that would require him to pay the account.  Discover should have removed the account from Plaintiff's credit report when they received the dispute from Equifax.

12. Plaintiff's Equifax credit profile that they sent to him as a result from his dispute states that the Discover account is reporting with an "L" within the account history, which represents a "charged off" account. Please see Exhibit I.  It is reporting that Plaintiff defaulted on the Discover account.  Plaintiff can't miss payments or default on an account that he wasn't legally, contractually, or financially obligated to pay, however, that is how it is being reported.   Plaintiff's Expert describes this report, as well as the credit report that lenders see, which is different and even more misleading; when a report is pulled on a consumer because they have applied for credit, the report doesn't state "authorized user" on it, just confusing codes. *Please see* Exhibit C.  Furthermore, it really doesn't matter if it states that the account is an "authorized

user" on it or not because the account negatively effects credit scores, as described below, and credit scores is what most, if not all credit lenders use when they make credit determinations.  Please see Exhibit C

13. Mr. Johnson had five authorized user accounts that were being reported on his Equifax Credit Report, which included, SEARS/CBNA, Chase Bank, Discover Financial, and two Bank of America accounts. All five authorized user accounts were disputed, by and through Counsel, on one dispute letter dated August 31, 2015. Please see Exhibit E.  Equifax responded to Plaintiff's first dispute on September 23, 2015, the results showed that three of the five authorized user accounts were deleted. Please see Exhibit H.  The three accounts that were removed were the Chase, SEARS/CBNA, and one of the Bank of America accounts.  The remaining two accounts were, one of the Banks of America accounts and Discover account. The remaining two authorized user accounts that remained on Mr. Johnson's Equifax Credit Report were disputed a second time, by and through Counsel, both on the same dispute letter, dated November 4, 2015. Please see Exhibit F. Equifax responded to Plaintiff's second dispute on November 18, 2015.  After the second dispute, one of the two remaining accounts were deleted, the Bank of America account; leaving the Discover Bank authorized user account *******47674* on Mr. Johnson's Equifax Credit Report. Please see Exhibit I. The Discover Bank authorized user account *******47674* is the account that forms this litigation.

14. Plaintiff was added to Discover Bank account number *******47674* as an authorized user. Plaintiff has not applied for this account.  Plaintiff is not obligated to pay this account nor does he have any manner of financial obligation regarding this

account. To be clear, Plaintiff does not have any contractual relationship with this Discover Bank account number *******47674* in any way.

15. FICO scores are used by 90% of lenders across the country.  Please see subsection "What FICO® Score versions are available at myFICO?" under  "learn more" at:

http://www.myfico.com/credit-education/fico-score-8-and-multiple-versions-of-fico-scores/

The statements that FICO' Scores are "used by 90% of top lenders" and "FICO Scores are used in 90% of lending decisions" are based on a third-party study of all versions of all FICO Scores sold to lenders, including but not limited to FICO Scores calculated from the FICO Score 8 model.

*Please also see* Exhibit C

16. Authorized User accounts are calculated into all FICO scoring.  Please see

http://www.myfico.com/credit-education/fico-score-8-and-multiple-versions-of-fico-scores/

**Authorized user of credit card**

All FICO® Score versions include authorized user credit card accounts when calculating a score. This can help people benefit from their shared management of a credit card account. It also helps lenders by providing scores that are based on a full snapshot of the consumer's credit history.

*Please also see* Exhibit C

17. The three major credit reporting bureaus know and understand that an authorized user does not have any responsibility for payment of the debt and **they remove them upon request of the authorized user**.

    a. Experian explains on their website that they will delete the account when requested from an authorized user because they do not have any responsibility for paying the debt. Please see Experian's website, available at http://www.experian.com/blogs/ask-experian/2013/12/18/experian-will-

removed-delinquent-authorized-user-accounts-on-request, (Because an authorized user has no responsibility for repayment of the debt Experian will remove authorized user accounts with negative payment history upon request). *Please see* Exhibit B.

b. TransUnion, another credit reporting agency, admitted in a deposition that because authorized users do not have any responsibility of paying the account, they will immediately remove the account once they receive the request from the authorized user to have the account removed from their credit report, even without contacting the data furnisher. *Please see* Exhibit A.

c. Equifax even deletes most of the authorized user accounts once the consumer requests it to be deleted.  However, Equifax is incredibly inconsistent.  Equifax will remove some authorized user accounts when the authorized user requests the account to be removed and not remove other authorized user accounts, after receiving a dispute/request for the account to be removed, under the exact same circumstances. *Please see Johnson v. Equifax Information Services*, LLC *et al*, Cause No. 4:16-cv-551, Eastern District of Texas.  Mr. Johnson had five authorized user accounts that were being reported on his Equifax Credit Report, which included, SEARS/CBNA, Chase Bank, Discover Financial, and two Bank of America accounts. All five authorized user accounts were disputed on one dispute letter. After the dispute, three of the five authorized user accounts were deleted.  The three accounts that were

removed were the Chase, SEARS/CBNA, and one of the Bank of America accounts.  The remaining two accounts were, one of the Banks of America accounts and Discover account. The remaining two authorized user accounts that remained on Mr. Johnson's Equifax Credit Report were disputed a second time, both on the same dispute letter. After the second dispute, one of the two remaining accounts were deleted, the Bank of America account; leaving the Discover authorized user account on Mr. Johnson's Equifax Credit Report.  *Please see* Exhibit D.  *Please also* see *Gesin v. Equifax Information Services*, Cause No. 3:16-cv-3277, Northern District of Texas. Ms. Gesin had two authorized user accounts on her Equifax credit report, she had a Bank of America and a Discover account. Both accounts were disputed on one letter that used the same language and was identical to the letters in this case and Equifax removed the Bank of America account and continued to report the Discover account.  Equifax is so inconsistent that, even though 15 USC §1681i(a)(2) requires Equifax to communicate the dispute to the data furnisher within 5 business days of receiving it, however, for some authorize user disputes they will contact the data furnisher, via an ACDV or CDV, which is the form/mechanism that Equifax uses to communicate the dispute with the data furnishers, and other times, as in this case, they will not communicate the dispute with the data furnisher at all and just continue reporting the account on their own, which directly violates 15 USC §1681i(a)(2).  *Please see Saunders v. Equifax Information Services*, LLC, Cause No. 1:16-cv-525, United States

District Court, Western District of Texas, and *Howard v. Equifax Information Services*, LLC, Cause No. 1:16-cv-240, Western District of Texas, the data furnishers in both of those cases had to be dismissed by Plaintiff because Equifax didn't send them an ACDV, but just continued to report the authorized user account.  However, Equifax **did send** ACDVs in the cases of *Johnson v. Equifax Information Services*, LLC, Cause No. 4:16-cv-551, Eastern District of Texas, and *Ostiguy v. Equifax Information Services*, LLC, Cause No. 5:16-cv-790, Western District of Texas. The status of the accounts and the disputes were identical, however, Equifax treated them differently.  With or without the ACDV being sent to the data furnisher, Equifax at times will delete the authorized user accounts and at times will continue to report them after being disputed and requested to be removed.  *Please see* Exhibit C. Even Equifax can not deny that fact.  Equifax's policy and procedure is a coin toss on if they continue to report the Authorized User accounts after a dispute and a coin toss if Equifax even notifies the data furnisher that the account was even disputed.

18. The account is reporting negative information on Plaintiff's credit report. Negative information that Plaintiff is not responsible for.  This information is both false and misleading, it is reporting as if Plaintiff is responsible and should have paid this account when in fact the Plaintiff has no obligation to pay the account, nor does she have any financial or any other manner of responsibility regarding the account.

19. The account is both misleading and falsely representing Plaintiff's payment

history.  Only the Primary account holder has contractual and financial obligation to pay the account, authorized users have zero financial obligation because they never contractually bind themselves to the account or have any agreement with Discover.  The reporting is false on the face of the credit report.  The account is reporting as if Plaintiff, missed the payments on the account, however Plaintiff can't be late on a payment that he has no obligation or is financially obligated to pay.  To be clear, the only individual that is required to pay the Discover account is the primary account holder, which is not the Plaintiff, because the Primary account holder has contractually and financially bound themselves as being responsible for the payment.  The negative Discover account is crushing Plaintiff's credit scores.  FICO, which calculates credit scores that are used by a vast majority of lenders, calculates the authorized user accounts in their scoring.  Please see Exhibit C…. Because Plaintiff's authorized user account has so many late payments on it, it led to a charge off, which is devastating Plaintiff's credit score and crushing her lending power.  The higher the score, the greater the lending power and better terms and/or interest rates.  Please see Exhibit C.  The account is false because it is reporting as if Plaintiff didn't make her payments, however, Plaintiff, the authorized user, has absolutely no responsibility to pay the Discover account, only the primary account holder has the contractual liability and responsibility to pay, that is the reason that credit bureaus such as Experian, TransUnion will always delete upon request of the authorized user and Equifax, from time to time, will delete the account once it is disputed as well.  Even though the account is false on its face, and is falsely representing Plaintiff's payment history, but even if, the account was ever deemed to be "technically accurate", the Fifth Circuit has

ruled that even if it is technically accurate, it turns inaccurate, if it is so misleading that it could be expected to adversely effect credit decisions. Reporting that Plaintiff missed so many payments that the account "charged off", on an account that he has zero obligation to pay, and reporting as if Plaintiff was the individual responsible for paying, which also lowers credit scores because of it, is extremely misleading and since it lowers credit scores, it definitely could adversely effect credit decisions, which is the Fifth Circuit definition of being inaccurate.  *please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895-96 (5th Cir. 1988) (A credit entry may be "inaccurate" within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions"); *please also see Dalton v. Capital Associated Indus., Inc.,* 257 F.3d 409, 415 (4th Cir. 2001)(A report is inaccurate when it is "patently incorrect" or when it is "misleading in such a way and to such an extent that it can be expected to [have an] adverse [ ]" effect. *Sepulvado v. CSC Credit Servs.,* 158 F.3d 890, 895 (5th Cir.1998).)

20. An account that is reporting as a charged off account, crushes credit scores and severely damages lending power, by either not getting the loan at all or if the loan is granted, at much higher interest rates because of the lower credit score. Credit scores are used by vast majority of lenders.  Please see Exhibit C. Plaintiff has suffered because of the lowered credit scores.

21. Furthermore, the Third Circuit added to the Fifth Circuit's *Sepulvado's* case by ruling that a determination if information, even if technically accurate, was misleading that it could adversely effect credit decisions is a question to be submitted

to the jury and can't be determined by summary judgment or any other dispositive motion. *please see Seamans v. Temple Univ.,* 744 F.3d 853 (3d Cir. 2014)(Whether technically accurate information was misleading in such a way and to such an extent that it can be expected to have an adverse effect generally is a question to be submitted to the jury, on a claim under the FCRA contesting the reasonableness of an investigation. Fair Credit Reporting Act, §§ 607(b), 623(b), 15 U.S.C.A. §§ 1681e(b), 1681s–2(b).).  Even though Plaintiff's lending power has suffered because of Equifax an Discover but the Fifth Circuit in the *Sepulvado* ruling was that Plaintiff doesn't even have to show that the account was responsible for a specific credit denial or higher interest, just that it "can be expected to adversely affect credit decisions" and the Third Circuit in the *Seamans* ruling was that only a jury can determine if the account was misleading in such a way that it can be expected to have an adverse effect on credit decisions.

22. Plaintiff disputed this account to Equifax, by and through Counsel. The Fair Credit Reporting Act requires consumers to dispute their issues with the bureaus, the bureaus then communicate the dispute with the data furnisher and if they both fail in their statutory responsibilities, then liability attaches to both the bureau and data furnisher, pursuant to 15 USC §1681. However, in this case, Plaintiff disputed this issue with Equifax and both Discover and Equifax failed to perform their statutory duties to investigate the account with Discover. The account continued to report inaccurately on Plaintiff's credit report after the Defendants concluded their so-called "investigations".

23. This account is not only inaccurate and false on its face by reporting that

Plaintiff had missed payments but is also misleading, the account, which he is not

responsible for, is being calculated in his credit score, which is what is used in a vast

majority of credit decisions.

24. Equifax has a statutory duty to use reasonable procedures to assure maximum

accuracy.  Equifax' procedures regarding authorized users account disputes are not

consistent.  At times the remove them and at times they continue to report them, with

all circumstances being the same.  Under the exact circumstances, Equifax will delete

some authorize user accounts after being disputed and not others.  For the accounts that

are not deleted and continue to report, Equifax at times will communicate the dispute

with the data furnisher and other times they will not.  Equifax's hit and miss procedure

regarding Authorized Users account disputes, does not assure accuracy, much less

maximum accuracy.  Equifax seems to have multiple different policies, leading to

different results, to dealing with authorized user accounts, a) Equifax will either just

delete the account, with or without communicating the dispute with the data furnisher;

or b) Equifax will continue to report the authorized user account, with or without

communicating the dispute with the data furnisher.  Equifax can not deny that they at

times will remove the authorized user accounts and at times continue to report them,

with all of them having the same circumstance of being an Authorized User. Please see

Exhibit C.

25. If the account is being reported, for what ever reasons, on the authorized users

credit report, it should be removed once the authorized user request it to be removed.

All three credit reporting bureaus has admitted that they remove them on request

because the authorized user is not responsible for paying the account, TransUnion has

admitted it in their deposition, please see Exhibit A, Experian has admitted it on their

website, please see Exhibit B, as with Equifax, their admissions come from their

common and regular practice. Equifax can not deny that they remove authorized user

accounts if requested by the authorized users.

26. The issue, if an authorized user's credit report is reporting negative credit

information that the primary account holder is responsible for, is either false and/or

misleading is an issue under the Fair Credit Reporting Act(FCRA). *Please see  Spector

v. Trans Union LLC First USA Bank, N.A.*, 301 F. Supp. 2d 231, 238 (D. Conn.

2004)(It is undisputed that Ms. Spector was an authorized user of her husband's credit

card, that he filed for Chapter 7 bankruptcy and that his credit card (on which Ms.

Spector was an authorized user) was implicated in that bankruptcy. Whether Trans

Union should include on credit reports of authorized users of credit cards information

regarding the bankruptcies of the principal card holders and whether the way in which

Trans Union discloses that information was negligent and misleading are certainly

issues under FCRA that will need to be resolved at trial. ).  It is important to note that

TransUnion now deletes authorize users accounts immediately upon the request of the

authorized user. *Please see* Exhibit A.

27. Equifax did not provide a good faith and reasonable investigation into the

disputed Discover Bank authorized user account. Plaintiff disputed the Discover Bank

account *******47674* reporting, by and through Counsel with two dispute letters to

Equifax. This dispute letters informed Equifax that Mr. Johnson was NOT a signer,

obligor or accommodation party to the original contract but merely and authorized user

of the account. Plaintiff, by and through Counsel, demanded that the authorized user

account be removed from his credit history.

28. Equifax did not follow reasonable procedures to assure maximum possible accuracy and has been reporting false and inaccurate information even after it has known or should have known the information was incorrect.

29. Defendant Discover Bank did not provide a good faith investigation into the disputed authorized user account number *******47674*. Plaintiff disputed the Discover Bank authorized user account, by and through Counsel, with two dispute letters to Equifax, which is required pursuant to 15 USC §1681 to trigger Discover's liability. In Equifax's response, dated September 23, 2015, Discover Bank verified the account and continued to report it to Equifax and Equifax continued to report the account as part of Plaintiff's credit history. In Equifax's second response, dated November 18, 2015, Discover Bank again verified the account and continued to report it to Equifax and Equifax continued to report the account as part of Plaintiff's credit history.

30. The reporting of this credit information on Plaintiff's credit report negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness. This information was furnished by Discover and reported by Equifax is misrepresenting the payment history and/or status of Plaintiff's account and misrepresenting the account as Plaintiff's financial responsibility on Plaintiff's credit report to her detriment. It continues to currently be reported on Plaintiff's credit report resulting in lowering Plaintiff's credit scores and furthering Plaintiff's damages. This false and misleading information as provided by Discover to Equifax, which Equifax failed to investigate and continues to

report an inaccurate account, was, and continues to be, the sole cause of Plaintiff's damages.

31. Plaintiff's credit reports, credit information and file formulated by Equifax have been reviewed by known and unknown, prospective and existing credit grantors and extenders of credit. The inaccurate authorized user information, furnished by Discover Bank and reported by Equifax, is continuing to damage the Plaintiff's credit rating and is a substantial factor preventing Plaintiff from taking advantage of receiving the most favorable terms in financing and interest rates for credit offers.

32. As a result of Defendant Equifax and Discover's conduct, Plaintiff has suffered great physical, emotional and mental pain and anguish, and Plaintiff will continue to suffer the same for an indefinite future, all to Plaintiff's great detriment and loss.

33. As a result of Defendants Equifax and Defendant's conduct, Plaintiff has suffered actual damages and will continue to suffer in the future, all to Plaintiff's great detriment and loss.

34. At all times pertinent hereto, Defendants Equifax and Discover acted by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

35. At all times pertinent hereto, the conduct of the Defendants Equifax and Discover, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CAUSES OF ACTION

36. Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

37. Plaintiff's suit is based upon the Defendants' violation of the Fair Credit Reporting Act (FCRA). All causes of action were the producing causes of damages that Plaintiff suffered.

38. Plaintiff suffered damages resulting from the Defendants' violations of FCRA.

### *Count I: Fair Credit Reporting Act*

39. Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

40. This lawsuit is brought against Equifax because the damages on which it is based were caused by their violation of the FCRA. In all instances of violating the FCRA, Defendants did so willfully and/or negligently. Under, 15 U.S.C. §1681n and §1681o, the Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys fees. Under, 15 U.S.C. §1681n and §1681o, the Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys fees:

15 U.S.C. §1681n, "Civil Liability for willful noncompliance" reads:

    (a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

        (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.

And, 15 U.S.C. §1681o, "Civil Liability for negligent noncompliance" reads:

(a) Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of:

(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action with reasonable attorney's fees as determined by the court.

41. Equifax violated its duty under 15 U.S.C. §1681i(a)(1)(a) to conduct a good faith and reasonable investigation into Plaintiff's dispute.  Plaintiff requested Equifax to reinvestigate this issue via a detailed dispute letter.

42. Equifax is reporting a derogatory and negative account that Plaintiff did not contractually sign for or obligate himself to pay.

43. Plaintiff has not agreed to pay, committed to pay, nor had he ever any obligation to be financially responsible for Discover account.

44. Plaintiff has not applied for or asked to be a user of this account but it continues to report on Plaintiff's credit report even after Plaintiff notified Equifax, via dispute letter, by and through Counsel, that he desired it to be removed from his credit report as Plaintiff was merely an authorized user and not responsible for the account.

45. Equifax is holding Plaintiff hostage on an account that she has no responsibility for paying.

46. Equifax is reporting negative information that Plaintiff is not responsible for

on Plaintiff's credit report and causing Plaintiff damage. This negative information being reported on Plaintiff's credit report and is both false and misleading. The negative information that Equifax is reporting is that Plaintiff has a derogatory payment history on her Discover account, it is reporting that Plaintiff missed so many payments on his Discover account that the account "charged off", on an account that she doesn't have a responsibility to even pay.  Plaintiff did not miss  payments on this account and to report an account on Plaintiff's credit report is both false and misleading.

47. If Equifax would have done a good faith and reasonable investigation, they would have determined that Plaintiff was an authorized user and has no contractual or financial obligation to pay the account and removed the account from his credit report just as they have in the past with countless other authorized user deletion requests.

48. Equifax is responsible for the information that Discover provides it. Please see *Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010)(Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party. Thus, Trans Union's argument that it does not control the accuracy of the SDN List is as misleading as the information it provided about Cortez.); please also see *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 320 (E.D. Pa. 2003) Whether the CRA has a duty to go beyond the original source will depend on a number of factors, but it is for the trier of fact to weigh these factors in deciding whether the CRA violated the provisions of section 1681i(a). *See Cushman*, 115 F.3d at 225.

49. Equifax did not conduct a good faith and reasonable investigation into

Plaintiff's dispute.

The section entitled "Procedure in case of disputed accuracy" under 15 U.S.C.
§1681i(a)(1)(A) reads:

(a)   Reinvestigations in case disputed information

(1) Reinvestigation required

(A) In general-- Subject to subjection (f), if the completeness or
accuracy of any item of information contained in a consumer's
file at a consumer reporting agency is disputed by the consumer
and the consumer notifies the agency directly, or indirectly
through a reseller, of such dispute, the agency shall, free of
charge, conduct a reasonable reinvestigation to determine
whether the disputed information is inaccurate and record the
current status of the disputed information, or delete the item
from the file in accordance with paragraph (5), before the end
of the 30 day period beginning on the date on which the agency
receives the notice of the dispute from the consumer or reseller.

And:

15 U.S.C. §1681i(a)(5) reads:

(5) Treatment of Inaccurate or Unverifiable Information

(A) *In general*. If, after any reinvestigation under paragraph (1) of any
information disputed by a consumer, an item of the information
is found to be inaccurate or incomplete or cannot be verified,
the consumer reporting agency shall-

(i)   promptly delete that item of information from the file of the
consumer, or modify that item of information, as
appropriate, based on the results of the reinvestigation;
and

(ii)   promptly notify the furnisher of that information that the
information has been modified or deleted from the file of
the consumer

50. In addition, Defendant Equifax is also currently violating 15 U.S.C. §1681e(b), by not following reasonable procedures to assure maximum possible accuracy, because Equifax is allowing a data furnisher(Discover) to report on Plaintiff's credit report after he requested it to be removed, especially due to the fact that the account contains extremely negative information on Plaintiff's credit report; negative information that Plaintiff does not have a legal, contractual, or financial obligation to pay, but is reporting as if Plaintiff is the primary account holder with the legal, contractual and financial obligation to pay.  Equifax knows that Plaintiff is not responsible for paying the account and even removed four (4) of the five (5) authorized user accounts in two dispute letters but still continued to report the derogatory Discover account, even after Plaintiff requested the entire account to be removed from his credit report, twice.  The authorized user accounts negatively affect and lower fico credit scores, which is what a majority of loan decisions are based on.  Equifax is not following reasonable procedures to assure maximum possible accuracy.

The section entitled "Compliance Procedures" under 15 U.S.C. §1681e(b) reads:

> (b) Accuracy of report.
>> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

51. Discover Bank violated its duty under 15 U.S.C. §1681s-2(b) to conduct a reasonable and good faith investigation into Plaintiff's notice of dispute and failing to delete, modify(correct) or permanently block the inaccurate information. After receiving dispute notice from Equifax, Discover Bank did not conduct a complete,

accurate or reasonable investigation into the disputed issue. Discover verified the account as being accurately reported after it was disputed with two thorough and detailed dispute letters.  Discover should have discovered that the information they are providing Equifax was not accurate, that Plaintiff is not responsible for the account and that Discover should not be reporting it on Plaintiff's credit report after he requested the account to be removed.

52. Not only does the data furnisher (Discover) have to conduct the investigation once disputed with the credit bureaus but they must conduct a good faith and reasonable investigation. *Please see Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426 (4th Cir. 2004)(Provision of the Fair Credit Reporting Act (FCRA) requiring any person providing information to consumer reporting agency, upon being notified that information is disputed, to "conduct an investigation" with respect to this disputed information imposes on creditors an obligation to conduct reasonable investigation of their records, as opposed to mere superficial or unreasonable inquiry, to determine whether disputed information can be verified. Consumer Credit Protection Act, § 623(b)(1)(A), as amended, 15 U.S.C.A. § 1681s-2(b)(1)(A).)

53. Discover is instructing Equifax to report an account that Plaintiff did not contractually sign for or have any obligation to pay.

54. Plaintiff was NOT a signer, obligor or accommodation party to the original contract. Plaintiff is not obligated to pay this account nor does he have any manner of financial obligation regarding this account. But Discover continues to instruct Equifax to report the inaccurate account on Plaintiff's credit report even after Plaintiff disputed the account and stated that Plaintiff desired to be removed as a user via Plaintiff's

dispute letter, by and through Counsel, with two dispute letters.

55. Discover is holding Plaintiff hostage on an account that is not his.

56. Discover is instructing Equifax to report negative information that Plaintiff is not responsible for on Plaintiff's credit report and causing Plaintiff damage.  The negative information, that Plaintiff is not responsible for, is being reporting on Plaintiff's credit report and is both false and misleading. This negative information being reported on Plaintiff's credit report and is both false and misleading. The negative information that Discover is reporting is a charged off account, with a derogatory payment history containing multiple late payments up to 149 days past due.

57. Discover Bank did not conduct a good faith and reasonable investigation into Plaintiff's dispute.

The section entitled "Duty of Furnishers of Information Upon Notice of Dispute" under 15 U.S.C. §1681s-2(b) reads:

(1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute <u>with</u> regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

(A) conduct an investigation with respect to the disputed information:

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a

consumer reporting agency only, as appropriate based on the results
of the reinvestigation promptly
  i  modify that item of information
  ii  delete that item of information
  iii  permanently block the reporting of that item of information

58. Defendant Equifax previously filed a motion to dismiss in this case and one of

their arguments is that the CFPB requires them to report the account on the authorized

user's credit report.  There are several problems with that argument.  Even if the CFPB

requires that account to be originally reported on an authorized user's credit report, the

CFPB does not require the account to continue on the authorized user's credit report if

the authorized user requests to have it removed. The CFPB website states that credit

bureaus will remove authorized user accounts from the authorized user's credit report,

at the request of the authorized user.  Please see,

http://www.consumerfinance.gov/askcfpb/1485/i-was-authorized-user-my-deceased-

relatives-credit-card-account-am-i-liable-repay-debt.html   please see Exhibit G

59. Equifax has admitted, in the form of their actions, that they have a policy of

removing authorized user accounts from authorized user's credit reports, when

requested by the authorized user.  The other two major bureaus, TransUnion and

Experian have expressly stated that because the authorized user does not have any

responsibility to pay on the account that they will remove the account from their credit

report at the request of the authorized user.  When the three major credit bureaus

remove the authorized user account for the authorized users credit report, they are

doing so in compliance of any CFPB's regulations, and the CFPB condones the

removal of the authorized user's account from the authorized user's credit reports.

Please see Exhibit G.

60. However, even if the CFPB had a policy that stated that all authorized accounts must always stay and report on an authorized user's credit report(which is not their policy), the regulation would contradict 15 U.S.C. §1681 that require credit reporting bureaus maintain a standard of "maximum possible accuracy on credit reporting services".  Please see <u>Miller v. Trans Union, LLC</u>, 3:12-CV-1715, 2013 WL 5442008, at *5 (M.D. Pa. Aug. 14, 2013), <u>report and recommendation adopted in part,</u> 3:12-CV-01715, 2013 WL 5442059 (M.D. Pa. Sept. 27, 2013)(consistent with the broad remedial goals of the Act, it has been held that information which may be technically accurate may still give rise to liability under the FCRA if that information is misleading, since § 1681e(b) imposes a standard of "maximum possible accuracy" on credit reporting services. Often, "the distinction between 'accuracy' and 'maximum possible accuracy' is not nearly as subtle as may at first appear, it is in fact quite dramatic." *Cortez v. Trans Union,* LLC, 617 F.3d 688, 709 (3d Cir.2010).)) Reporting that an authorized user missed a payment on an account that they are not responsible for paying is both false and misleading and if the CFPB required the credit reporting bureaus to continue to report a delinquent account that the consumer was not delinquent on, would contradict the Fair Credit Reporting Act.  Federal statutes trump government agencies' regulations.  <u>Pierre v. Planet Auto., Inc.</u>, 193 F. Supp. 3d 157 (E.D.N.Y. 2016), <u>reconsideration denied,</u> 13-CV-675 (MKB), 2016 WL 6459617 (E.D.N.Y. Oct. 31, 2016)(The plain text of the MMWA prohibits assignee liability where the assignee is not the person who created the written warranty. 15 U.S.C. § 2310(f) (providing that the MMWA may be enforced against "only

the warrantor [who] actually ... created a written warranty ... and no other person"). Although the Holder Rule normally permits an individual to assert all claims and defenses against an assignee that he or she could have asserted against the assignor, "[r]egulations cannot trump the plain language of statutes." *Taylor*, 150 F.3d at 693 (first quoting *Robbins v. Bentsen*, 41 F.3d 1195, 1198 (7th Cir.1994); and then citing *Foster v. Celani*, 849 F.2d 91, 91 (2d Cir.1988)); *see also Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. ——, ——, 133 S.Ct. 1326, 1334, 185 L.Ed.2d 447 (2013) ("It is a basic tenet that regulations, in order to be valid, must be consistent with the statute under which they are promulgated." (citation and internal quotation marks omitted)); *Seabrook v. Obama*, No. 14–CV–4431, 2015 WL 4635617, at *6 (S.D.N.Y. Aug. 4, 2015) (noting that "statutes trump regulations"); *cf. Costantino v. U.S. Citizenship*, No. 14–CV–8753, 2015 WL 8489976, at *2 n. 2 (S.D.N.Y. Dec. 9, 2015) (stating that an agency's policy guidance cannot "trump the plain language of the relevant statutes"). The Court finds that section 2310(f) of the MMWA trumps the Holder Rule and expressly prohibits Plaintiff from asserting her MMWA claim against Suzuki as an assignee who did not create the warranty at issue. The Court therefore grants Suzuki's motion for summary judgment as to Plaintiff's MMWA claim.); please also see <u>Jordan v. Chrysler Credit Corp.</u>, 73 F. Supp. 2d 469, 474 (D.N.J. 1999)Thus, in 1980, when Congress amended § 1641(a) to limit assignee liability to violations "apparent on the face of the disclosure statement," it "narrowed considerably the potential scope of assignee liability," in effect, "trump[ing] the FTC'S Holder Notice." *Id.* at 692–93. Both the Fifth and Eleventh Circuits addressed the same issue and reached the same conclusion. *See Green,* 179 F.3d at 294–96; *Ellis,* 160 F.3d at 708–10; *see also Mayfield,* 1999 WL 182586, at *5.; please also see <u>In re</u>

NextWave Pers. Communications Inc., 244 B.R. 253, 276 (Bankr. S.D.N.Y. 2000),

subsequent mandamus proceeding sub nom. In re F.C.C., 208 F.3d 137 (2d Cir.

2000)(The protection due the FCC under the Bankruptcy Code exists in the debtors' Plan.

The FCC will be paid in full, the putative "defaults" cured and nullified. No creditor can

ask for better protection, in or out of bankruptcy. The FCC cannot stand upon 47 C.F.R. §

1.2110(f)(4)(iv) to suborn Title 11: It is a fundamental principle of American law that

legislative statutes take precedence over conflicting administrative regulations. *See, e.g.,*

*Caldera v. J.S. Alberici Constr. Co.,* 153 F.3d 1381, 1383 n. ** (Fed.Cir.1998) ( "Statutes

trump conflicting regulations"); *Wolf Creek Collieries v. Robinson,* 872 F.2d 1264, 1267

(6th Cir.1989) ("statutory language ... prevail [s] over inconsistent regulatory language");

*Pacific Gas and Elec. Co. v. United States,* 664 F.2d 1133, 1136 (9th Cir.1981) ("a

regulation which operates to create a rule out of harmony with the statute, is a mere

nullity") (citing *Manhattan Gen. Equip. Co. v. Commissioner of Internal Revenue,* 297

U.S. 129, 134, 56 S.Ct. 397,   80 L.Ed. 528 (1936)); *United States v. Gordon,* 638 F.2d

886, 888 (5th Cir.1981) ("Whatever effect the agency regulation may have under other

circumstances, it cannot supersede a statute applicable to those present here").*Furlow v.*

*United States,* 55 F.Supp.2d 360, 364–65 (D.Md.1999) (Treasury Department regulation

impermissibly conflicting with 26 U.S.C. § 151).))


61. Plaintiff's amended complaint alleges that Equifax failed to follow reasonable

procedures in the lack of a good faith and reasonable investigation in Plaintiff's dispute

as well as Equifax failed to follow reasonable procedures to assure maximum accuracy

when they allowed inaccurate information to report on Plaintiff's credit report as well as

their failure to follow reasonable procedures to assure maximum accuracy when they failed to provide a good faith and reasonable investigation.  Equifax previously filed a motion to dismiss, however, as the Fifth Circuit has ruled, as well as Circuit courts throughout the Country has ruled, that reasonable procedures is a fact question for the jury.  *Please see Cousin v. Trans Union Corp.,* 246 F.3d 359 (5th Cir.2001)(The question of whether an agency followed "reasonable procedures" is typically a fact question reserved for the jury; please also see *Davis v. Trans Union, LLC*, 526 F. Supp. 2d 577 (W.D.N.C. 2007)( Whether a furnisher of credit information conducted reasonable investigation with regard to disputed information under Fair Credit Reporting Act (FCRA) is a question of fact left to the jury. Fair Credit Reporting Act, § 623(b)(1)(A), l 15 U.S.C.A. § 1681s–2(b)(1)(A).) *please also see Edeh v. Midland Credit Mgmt., Inc.,* 748 F. Supp. 2d 1030 (D. Minn. 2010) *aff'd,* 413 Fed. Appx. 925 (8th Cir. 2011)(As a general rule, whether an investigation by the furnisher of debt information is reasonable under the Fair Credit Reporting Act (FCRA) is a question of fact for the jury. Fair Credit Reporting Act, § 623(b)(1), 15 U.S.C.A. § 1681s–2(b)(1).); please also see *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080 (D. Or. 2007)(The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases**.**)*; please also see Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080 (D. Or. 2007)(the "overwhelming majority of cases" a jury could infer the unreasonableness of a defendant's procedures from the fact that those procedures permitted an inaccuracy to occur. Moreover, the statement that evidence of inaccuracy would be sufficient to survive summary judgment only in a *majority* of cases necessarily forecloses the burden-shifting interpretation. Properly understood, *Guimond* stands for the proposition that where—and only where—evidence of inaccuracy permits the conclusion that a consumer reporting agency's accuracy-assuring procedures are

unreasonable, such evidence is minimally sufficient to create a question of fact for jury determination.); please also see *McCauley v. Trans Union LLC*, 02 CIV. 4042 (VM), 2003 WL 22845741 (S.D.N.Y. Nov. 26, 2003(Many courts considering claims for negligent violation of the FCRA have manifested extreme reluctance to grant summary judgment to credit reporting agencies on claims that they failed to follow reasonable procedures to ensure maximum possible accuracy. The Fourth Circuit has noted that "[t]he issue of whether the [credit reporting] agency failed to follow 'reasonable procedures' will be a 'jury question[ ] in the overwhelming majority of cases." ' *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 416 (4th Cir.2001) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995)).

62. Because all of the issues alleged in the amended complaint are determinations of "reasonableness", even if the facts are "undisputed", it cannot be resolved on summary judgment or any other dispositive motion. Please see *Fahey v. Experian Info. Solutions, Inc.*, 571 F. Supp. 2d 1082, 1092 (E.D. Mo. 2008)("The determination of the 'reasonableness' of the defendant's procedures ... is treated as a factual question **even when the underlying facts are undisputed**. It therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of the procedures is beyond question". *Crabill,* 259 F.3d at 664.); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080 (D. Or. 2007)**(***Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir.1995) (citations and footnotes omitted; emphasis supplied); *see also Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir.2001) ("The determination of the 'reasonableness' of the defendant's procedures ... is treated as a factual question **even when the underlying facts are undisputed**. It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question ...").

63. Regardless of the reasons that the account was originally reported, once the authorized user requests it to be deleted, the account must be deleted.

64. The conduct of Equifax and Discover are the direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, damages and harm to the Plaintiff that are outlined above and, as a result, the Defendants are liable to compensate the Plaintiff for the full amount of actual, statutory, compensatory and punitive damages, as well as such other relief, permitted by law

## **DEMAND FOR JURY TRIAL**

65. Plaintiff demands trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant Equifax based on the following requested relief:

a.  Actual damages pursuant to 15 U.S.C. §1681;

b.  Statutory damages pursuant to 15 U.S.C. §1681;

c.  Punitive damages pursuant to 15 U.S.C. §1681;

d.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n, §1681o; and

e.  Such other and further relief as may be necessary, just and proper.

Dated: January 31, 2017

Respectfully submitted,

/s/Dennis McCarty

Dennis McCarty
ATTORNEY FOR PLAINTIFF
Mississippi Bar No. 102733
P.O. Box 111070
Carrollton, TX 75011
Telephone: 817-704-3375
Fax (817) 887-5069
dmccartylaw@att.net
Federal Bar No. 993800

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of January, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys on record:

Date Signed this the 31st day of January, 2017

Respectfully submitted,

/s/ Dennis McCarty
Dennis McCarty
ATTORNEY FOR PLAINTIFF